**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

TONYA R. KOEHLER,

                Plaintiff,

                                          Case No. 3:14-cv-691-J-JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Tonya R. Koehler[2] ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is a result of "back [problems]," "depression," "anxiety," "epilepsy," and having "seizures every 6 mo[nths.]" Transcript of Administrative Proceedings (Doc. No. 14; "Tr." or "administrative transcript"), filed September 22, 2014, at 238 (some capitalization omitted). On September 21, 2009, Plaintiff filed applications for DIB and SSI, alleging an onset disability date of June 21, 2008. Tr. at 191-92 (DIB), 193-96 (SSI). Plaintiff's applications were denied initially, see Tr. at 97, 99, 105-07 (DIB), 98, 100, 146-48 (SSI), and upon reconsideration, see Tr. at 101, 103, 115-16 (DIB), 102, 104, 117-18 (SSI).

---

    [1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 13), filed September 22, 2014; Reference Order (Doc. No. 15), entered September 24, 2014.

    [2] Ms. Koehler's last name was formerly Douglas, and it appears that way throughout much of the record.

On August 10, 2012, an Administrative Law Judge ("ALJ") held a hearing during which the ALJ heard testimony from Plaintiff, who was represented by counsel; Plaintiff's mother; and a vocational expert ("VE"). Tr. at 35-96. On October 25, 2012, the ALJ issued a Decision finding Plaintiff not disabled and denying Plaintiff's claims. Tr. at 14-25. Plaintiff then requested review by the Appeals Council, Tr. at 8, 10, and submitted evidence to the Council in the form of two briefs authored by her attorney representative and some additional medical evidence, Tr. at 5-6; see Tr. at 352, 353-62 (briefs), 839-41 (medical evidence).[3] On April 15, 2014, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner. On June 16, 2014, Plaintiff commenced this action under 42 U.S.C. § 405(g) and § 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises three issues on appeal: whether the ALJ "failed to articulate good cause for failing to credit the treating opinion of [George Restea, M.D.]"; whether the ALJ "failed to explain why []he was not crediting the opinion of [William E. Beaty, Ph.D.], h[is] own examining mental health specialist"; and whether the Appeals Council erred in evaluating the new evidence submitted to it. Plaintiff's Brief (Doc. No. 21; "Pl.'s Br."), filed November 26, 2014, at 1; see id. at 11, 18, 21. On February 20, 2015, Defendant responded by filing a Memorandum in Support of the Commissioner's Decision (Doc. No. 24; "Def.'s Mem."). After a thorough review of the entire record and consideration of the parties' respective filings, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further administrative proceedings.

---

[3] As discussed in more detail below, the Appeals Council also considered other additional medical evidence that does not appear in the administrative transcript. See Tr. at 2.

## **II.  The ALJ's Decision**

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 16-24.  At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since June 21, 2008, the alleged onset date." Tr. at 16 (emphasis and citations omitted).  At step two, the ALJ found Plaintiff "has the following severe impairments: seizures, degenerative disc disease of the lumbar spine, and history of polysubstance abuse." Tr. at 16 (emphasis and citations omitted).  At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 16 (emphasis and citations omitted).

---

[4]  "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The ALJ determined Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except that [Plaintiff] is unable to climb ladders, ropes, or scaffolds; is unable to work around unprotected heights; is unable to work around moving or hazardous machinery; is unable to drive a vehicle; is limited to simple, unskilled and repetitive work; and [Plaintiff] is limited to brief and superficial contact with the general public.

Tr. at 18 (emphasis omitted). At step four, the ALJ found Plaintiff "is unable to perform any past relevant work" as "a waitress, counter attendant, sales person, telephone solicitor, receptionist, and secretary." Tr. at 23 (some emphasis and citation omitted). At step five, after considering Plaintiff's age ("36 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 23 (emphasis and citations omitted), including "Laundry Sorter," "Maid/Housekeeper," and "Garment Sorter," Tr. at 24. The ALJ concluded that Plaintiff "has not been under a disability . . . from June 21, 2008, through the date of th[e D]ecision." Tr. at 24 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

The first two issues both involve medical opinions and are addressed together. The third issue is addressed separately. A discussion follows.

### A. Medical Opinions

Plaintiff argues the ALJ erred in evaluating two treating opinions of Dr. Restea and an examining opinion of Dr. Beaty. Pl.'s Br. at 1, 11-18, 18-21. In support, Plaintiff states that the ALJ provided "conclusory statements and boilerplate" language in discounting Dr. Restea's opinion.[5] Id. at 14. As to Dr. Beaty's opinion, Plaintiff points out that "[t]he ALJ failed to explain the weight assigned to" this opinion. Id. at 18. Defendant responds that the ALJ provided sufficient reasons for discounting Dr. Restea's opinions. Def.'s Mem. at 11-12. Regarding Dr. Beaty's opinion, Defendant implicitly recognizes that the ALJ did not assign

---

[5] With respect to Plaintiff's argument about the ALJ providing "boilerplate" language in discounting Dr. Restea's opinion, the undersigned notes that the ALJ indeed appears to have relied upon boilerplate language throughout the Decision, which refers to the female Plaintiff as "he" or "his" no fewer than seven times. Tr. at 18, 19 (four times), 20, 23.

any particular weight to it but nevertheless argues that Plaintiff "has not demonstrated error with regard to" this opinion. Id. at 13.

### 1. Opinions at Issue (Dr. Restea and Dr. Beaty)

Dr. Restea, who has treated Plaintiff for ailments such as headaches, seizures, and back pain since at least 2007, see Tr. at 379 (note dated August 7, 2007),[6] authored two opinions. First, Dr. Restea wrote in August 2010 that Plaintiff "has been disabled due to illness since [April 1, 2008] and not able to be employed." Tr. at 567, 589 (duplicate). Second, on August 16, 2012, Dr. Restea completed a Functional Capacity Evaluation form, Tr. at 759, in which he opined as follows. Plaintiff can lift five pounds occasionally to one pound frequently. Tr. at 759. Plaintiff can sit three hours and stand/walk two hours in an eight-hour workday. Tr. at 759. Plaintiff can sit for fifteen minutes at a time before needing to move around, and she can stand/walk fifteen to thirty minutes at a time before needing to sit. Tr. at 759. Plaintiff needs a cane to ambulate. Tr. at 759. There is no need for Plaintiff to avoid dust, fumes, gases, extremes of temperature, humidity, or other environmental pollutants. Tr. at 759. Plaintiff can rarely push/pull, perform gross manipulation, reach, or operate motor vehicles. Tr. at 759. Plaintiff should never climb, bend and/or stoop, or work with or around hazardous machinery. Tr. at 759. Plaintiff can frequently perform fine manipulation. Tr. at 759.

According to Dr. Restea, Plaintiff should be expected to miss more than four days per month of work as a result of her impairments. Tr. at 759. Plaintiff's pain and other symptoms can constantly interfere with her concentration and attention. Tr. at 759. Plaintiff also requires the ability to lay down or elevate her legs to alleviate her pain. Tr. at 759.

---

[6] Plaintiff testified she started seeing Dr. Restea in "2005/2006." Tr. at 43.

Dr. Restea opined that all of these restrictions applied since 2009. Tr. at 759. He further opined that the medical basis for these restrictions is "spinal stenosis [and] seizure[s.]" Tr. at 759.

As for the examining opinion at issue, Dr. Beaty authored his opinion in February 2010, after examining Plaintiff that same month upon request from the Office of Disability Determinations. Tr. at 486-88. Dr. Beaty's examination was focused on Plaintiff's mental state. Tr. at 486-88. He opined Plaintiff "has history and characteristics indicative of Major Depression and Post-traumatic Stress Disorder, complicated by her seizures and the manner in which this is disruptive of her emotional experience." Tr. at 488. In terms of mental impairment diagnoses, Dr. Beaty opined Plaintiff has "Major Depressive Disorder, single episode, severe without psychotic features," as well as "Post-traumatic Stress Disorder, chronic[.]" Tr. at 488. According to Dr. Beaty, Plaintiff's prognosis was "poor[.]" Tr. at 488.

Dr. Beaty also provided a number of recommendations regarding Plaintiff's ability to perform work-related tasks:

> sitting – has to change positions every 15-20 minutes, back aches chronically; standing – every 15-20 minutes has to change to sitting, constantly shifting; walking – maximum 150 feet, gets fatigued and loses breath, diminished stamina; lifting and carrying – not heavier than a gallon of milk, and cannot carry far. Hearing – chronic []tinnit[u]s; speaking – adequate; traveling – needs to move around, has to use pillows to support self in seat; problems with understanding – misinterprets conversations a lot; memory for details is poor, has to write down. Sustained concentration and task persistence is ok when she can do a task; she avoids social interaction, used to like to be involved with other people; is not adaptable to social situations.

Tr. at 488.

**2.  Applicable Law**

The Regulations establish a "hierarchy" among medical opinions[7] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)).  The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."  20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(e).

With regard to a treating physician or psychiatrist,[8] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c).  Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's

---

[7] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

[8] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id.  When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)).  However, an ALJ may rely on

a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440. "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

### 3. Analysis

Regarding Dr. Restea's opinions, the ALJ wrote as follows:

As for the opinion evidence, George Restea, a treating physician, indicated that [Plaintiff] has been disabled due to illness since April 1, 2008. Dr. Restea's opinion is inconsistent with [Plaintiff's] activities of daily living as noted above, and with the date that [Plaintiff] herself is alleging that she became disabled. In fact, [Plaintiff] reported that she did not stop working until June 21, 2008, the date of her alleged onset of disability. Dr. Restea further opined that [Plaintiff] would be able to perform less than a full range of sedentary work, and would miss more than four days per month from work as a result of her impairments. He indicated that the restrictions applied as of 2009. However, both opinions expressed are quite conclusory, providing very little explanation of the evidence relied on in forming those opinions. In addition, the opinions are inconsistent

> with [Plaintiff's] essentially normal physical and mental examinations as noted above.

Tr. at 22 (citations omitted[9]).  The ALJ then went on to recite the general law regarding treating physicians' opinions, including correctly observing that "statements that a [Plaintiff] is 'disabled,' 'unable to work,' can or cannot perform a past job, meets a Listing or the like are . . . issues reserved to the Commissioner[.]" Tr. at 22.

Regarding Dr. Beaty's opinion, the ALJ summarized it when discussing the medical evidence, Tr. at 21-22, but he did not discuss or assign any weight to it when later analyzing the medical opinions of record, see Tr. at 22-23 (discussing the opinion evidence).

The ALJ erred with respect to both Dr. Restea and Dr. Beaty's opinions.  While the ALJ correctly observed that Dr. Restea's August 2010 (first) opinion that Plaintiff was disabled is conclusory, is inconsistent with Plaintiff's alleged disability onset date, and is regarding an issue reserved to the Commissioner, the ALJ provided very little reasoning for discounting the August 2012 (second) opinion.[10]  The explanation regarding the August 2012 (second) opinion boils down to the following: 1) the opinion is conclusory; and 2) it is "inconsistent with [Plaintiff's] essentially normal physical and mental examination findings[.]" Tr. at 22.  The August 2012 opinion, however, is not conclusory.  Indeed, as explained above, it breaks down in significant detail exactly what Plaintiff can and cannot be expected

---

[9] The ALJ cited only Dr. Restea's August 2010 opinion in his discussion of Dr. Restea's opinion evidence. See Tr. at 22 (citing Ex. 18F, 21F (duplicate)).  The undersigned assumes, however, that the ALJ was referring to both Dr. Restea's August 2010 and August 2012 opinions.  This is because the ALJ stated with regard to the latter opinion that "[Dr. Restea] indicated that the restrictions applied as of 2009," Tr. at 22, and the August 2012 opinion indeed states that the restrictions applied as of 2009, Tr. at 759.

[10] The ALJ did not explicitly state that he was discounting either of Dr. Restea's opinions, but when reading the ALJ's entire explanation regarding Dr. Restea and comparing the opinions with the ultimate RFC, it is evident that he discounted both of them. Compare Tr. at 22 (explanation), 18 (RFC), with Tr. at 567, 759 (opinions).

to do throughout the workday and workweek. See Tr. at 759. It also provides the diagnoses that lead to and cause these work-related limitations. See Tr. at 759.

As to the alleged inconsistency with "normal physical and mental examination findings," Tr. at 22, the undersigned finds that the ALJ did not explain this alleged inconsistency with the requisite specificity. Indeed, the ALJ merely recited a recognized "good cause" reason for discounting Dr. Restea's opinion. Cf., e.g., Gayler v. Astrue, No. 5:07-cv-121-Oc-GRJ, 2008 WL 4327050, at *6 (M.D. Fla. Sept. 18, 2008) (unpublished) (reversing and remanding ALJ's decision to discount a treating physician's opinion when "the ALJ failed to explain or even provide a clue as to how [the treating physician's] opinion was inconsistent with other record medical evidence"); Russ v. Astrue, No. 3:07-cv-1213-J-MCR, 2009 WL 764516, at *10 (M.D. Fla. Mar. 20, 2009) (unpublished) (finding an ALJ's "dismissal" of a treating physician's opinion was "deficient" when the ALJ noted the opinion "was 'not supported by objective findings,'" but did not provide any explanation for the reason) (quoting ALJ's Decision). A reasonable interpretation of Dr. Restea's (difficult to read) notes would be that Plaintiff's examination findings were not so "normal" as suggested by the ALJ. Indeed, Dr. Restea very often noted that Plaintiff's "Musc/skel" was not normal upon examination. See, Tr. at 379, 380, 381, 382, 384, 385, 386, 387, 389, 390, 392, 393, 394, 396, 397, 398, 448, 450, 548, 590, 591, 685. Without the ALJ clearly articulating an explanation for rejecting Dr. Restea's August 2012 opinion, judicial review is frustrated because the Court cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence.

Judicial review is further frustrated with respect to Dr. Beaty's February 2010 opinion because the ALJ did not state the weight assigned it and did not include it in the discussion of the opinion evidence of record. Tr. at 22-23.

For all of the foregoing reasons, reversal and remand is required for further consideration of Dr. Restea's and Dr. Beaty's opinions.[11]

## B. Appeals Council

Plaintiff argues that the Appeals Council erred in evaluating additional evidence submitted to it. Pl.'s Br. at 21-25. The Appeals Council stated in an Order allowing additional evidence that medical records from "Shands Starke Critical Access dated October 2012" were "received" and being made "part of the record." Tr. at 6; see Tr. at 839-41. In a later Order denying review, however, the Appeals Council made clear that it reviewed additional evidence that was not included in its original Order:

> We also looked at treatment notes from Union County Health Department dated December 2012 thru November 2013[;] Neurology Associates of Starke dated November 2012 thru April 2013; and a [RFC] questionnaire from John DeCerece, M.D.

---

[11] Defendant contends the ALJ's opinion is supported by substantial evidence, and Defendant provides a number of reasons (that the ALJ failed to provide) why the administrative transcript allegedly supports the ALJ's overall Decision. Def.'s Mem. at 12-13. Defendant's analysis cannot serve as post hac justifications to save the ALJ's otherwise infirm decision. See Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984). It is not the duty of Defendant or the Court to supply reasons for the ALJ's finding; rather, that duty rests with the ALJ. See Austin v. Astrue, No. 5:07cv52/MCR/EMT, 2008 WL 2385520, at *8 n.7 (N.D. Fla. June 9, 2008) (unpublished) (recognizing the Commissioner's arguments in support of the ALJ's discounting of a treating physician's opinion, but stating that "[w]hile [the arguments] may be true, the ALJ did not make these findings"); see also Green v. Shalala, 51 F.3d 96, 100-01 (7th Cir. 1995); Cline v. Sullivan, 939 F.2d 560, 563-69 (8th Cir. 1991).

Tr. at 2. The Appeals Council then went on to find that this additional evidence "does not affect the decision about whether [Plaintiff was] disabled beginning on or before October 25, 2012." Tr. at 2.

The parties agree that the additional evidence discussed by the Appeals Council in is Order denying review was not actually made part of the record. Plaintiff attached the additional evidence to her brief filed in this Court. See Pl.'s Br. at 10 n.19, Ex. A (Doc. No. 21-1). Both parties discuss the additional evidence in arguing their respective positions. Id. at 10-11, 21-25; Def.'s Mem. at 14-15. The Court, however, may not review evidence that was not included in the administrative transcript. See 42 U.S.C. § 405(g); see also Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1267-68 (11th Cir. 2007) (quoting Caulder v. Bowen, 791 F.2d 872, 876 (11th Cir. 1986) (noting that "evidence first presented to the district court [cannot] be considered for the purposes of a sentence four remand[12] because 'a reviewing court is limited to the certified administrative record in examining the evidence'")). Accordingly, on remand, the Administration shall ensure that the additional evidence is included in the administrative transcript and is properly considered.

## V. Conclusion

After due consideration, it is

**ORDERED**:

---

[12] Under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

   (A) Reevaluate the opinions of Dr. Restea and Dr. Beaty;

   (B) Ensure that the evidence originally submitted to the Appeals Council is included in the administrative transcript and is properly considered; and

   (C) Take such other action as may be necessary to resolve these claims properly.

2. The Clerk is further directed to close the file.

3. In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) or 1383(d)(2) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on September 29, 2015.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
copies:
counsel of record